UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Alfredo Meza,

    Plaintiff,

v.                            Civil Action No. 09-1580 (CKK)

U.S. Department of Justice *et al.*,

    Defendants.

MEMORANDUM OPINION

In this action brought *pro se* under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, plaintiff challenges the responses of the Department of Justice ("DOJ") and the United States Coast Guard to his requests for records.[1] DOJ and the Coast Guard move separately for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Upon consideration of the parties' submissions and the entire record, the Court will grant each motion and enter judgment for the defendants.

## I. BACKGROUND

<u>DOJ Records</u>

By letter of May 20, 2008, plaintiff requested documents pertaining to the following:

> 1. . . . whether the United States . . . requested to the government of the Republic of Panama to stop, board and search the M/V Castor ship (Panamanian flagged vessel) on May 31, 1999. 2. . . . whether the government of the Republic of Panama have issued and/or statement(s) of No Objection authorizing the United States Coast Guard to escort the M/V Castor ship from the international waters at 20 miles off the Venezuelan coast to United States waters, then it[] could be escorted to Miami, Florida and to enforce the United States law; instead of

---

[1] Plaintiff voluntarily dismissed the complaint against a third defendant, the National Archives and Records Administration. *See* Minute Order of January 22, 2010 (granting motion to dismiss pursuant to Fed. R. Civ. P. 41(a)(2)).

> Panamanian law. 3. . . . whether the government of Panama and/or Panamanian authorities have granted or consented their jurisdiction for my being prosecuted (tried) outside of the Panamanian territory in the above captioned [criminal] matter [in the United States District Court for the Southern District of Florida]. . . .

DOJ's Mot., Decl. of Vinay J. Jolly ("Jolly Decl.") [Dkt. No. 10-1], Ex. D. The Executive Office for United States Attorneys ("EOUSA"), a DOJ component, received the request on May 20, 2008, Jolly Decl. ¶ 4, and informed plaintiff by letter of August 26, 2009, that a search for responsive records conducted in the United States Attorneys Office for the Southern District of Florida (where plaintiff was prosecuted) located no responsive records. Jolly Decl. ¶ 13 & Ex. J. During the course of this litigation, which commenced with the filing of the complaint on August 20, 2009, defendant performed another search of that office, located records and, on October 15, 2009, released to plaintiff 25 unredacted pages of information. DOJ withheld eight pages in their entirety under FOIA exemptions 5, 6 and 7(C), *see* 5 U.S.C. § 552(b), and subsection (j)(2) of the Privacy Act, 5 U.S.C. § 552a. *Id.*, Ex. M.

Coast Guard Records

Plaintiff made the same request set forth above to the Coast Guard by letter dated August 24, 2008. Coast Guard's Mot., Decl. of Stanley Fields ("Fields Decl.") [Dkt. No. 17-1], Attach. A. Coast Guard searches "between October 2008 and November 2008, and again in between September and October 2009" located no responsive agency records, but the Coast Guard did provide plaintiff "[t]he relevant contents of [] one personal file . . .," Fields Decl. ¶ 17, maintained by "one of the members involved in the enforcement action[,] *id* ¶ 15. The Coast Guard redacted third-party identifying information from the released pages under FOIA exemptions 6 and 7(C). *Id.* ¶ 16 and *Vaughn* index [Dkt. No. 17-4].

## II. LEGAL STANDARD

Summary judgment is appropriate upon a showing that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The FOIA requires a federal agency to release all records responsive to a properly submitted request except those protected from disclosure by one or more of nine enumerated exemptions. *See* 5 U.S.C. § 552(b). The agency's disclosure obligations are triggered by its receipt of a request that "reasonably describes [the requested] records" and "is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed." 5 U.S.C. § 552(a)(3)(A). The FOIA authorizes the court only "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Thus, the elements of a FOIA claim are (1) improperly (2) withheld (3) agency records. "Judicial authority to devise remedies and enjoin agencies can only be invoked under the jurisdictional grant conferred by [5 U.S.C.] § 552 [(a)(4)(B)], if the agency has contravened all three components of this obligation." *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 150 (1980).

In a FOIA case, the Court may award summary judgment to an agency solely on the information provided in affidavits or declarations when they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the

record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). Such affidavits are "accord[ed] substantial weight." 5 U.S.C. § 552(a)(4)(B). In opposing a summary judgment motion, plaintiff may not "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit," *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990), but rather must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

III. DISCUSSION

Pointing to affidavits "sworn to and subscribed before the U.S. Magistrate Judge on September 2, 1999," plaintiff claims that the released records "are inconsistent with his FOIA[] request[s]." Pl.'s Response and Opposition to the Defendants U.S. Department of Justice's Motion for Summary Judgment ("Pl.'s DOJ Opp'n") [Dkt. No. 21] at 4; Pl.'s Response in Opposition to the Defendant U.S. Coast Guard's Motion for Summary Judgment ("Pl.'s Coast Guard Opp'n") [Dkt. No. 32] at 4.

An inadequate search for records constitutes an improper withholding under the FOIA. *See Maydak v. U.S. Dep't of Justice*, 254 F. Supp.2d 23, 44 (D.D.C. 2003). Thus, when, as here, an agency's search for records is challenged, "the agency must show beyond material doubt [] that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). For purposes of this showing, the agency "may rely upon affidavits . . . , as long as they are relatively detailed and nonconclusory and . . . submitted in good faith." *Id*. (citations and quotation marks omitted). The required level of detail "set[s] forth the search terms and the type of search performed, and

aver[s] that all files likely to contain responsive materials (if such records exist) were searched. . . ." *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); accord *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999). "Once the agency has shown that its search was reasonable, the burden shifts to [plaintiff] to rebut [defendant's] evidence by a showing that the search was not conducted in good faith." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) *(*citing *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985)). Summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search. *Valencia-Lucena,* 180 F.3d at 326 (citing *Founding Church of Scientology v. Nat'l Sec'y Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

In determining the adequacy of a FOIA search, the court is guided by principles of reasonableness, *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27-8 (D.C. Cir. 1998), mindful that an agency is required to produce only those records in its custody and control at the time of the FOIA request. *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1110 (D.C. Cir. 1983). Because "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search," *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003), "the [mere] fact that a particular document was not found does not demonstrate the inadequacy of a search." *Boyd v. Crim. Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007) (citations omitted).

DOJ's Search for Records

DOJ located responsive records in the United States Attorney's Office for the Southern District of Florida ("SDFL"), which had prosecuted plaintiff for violations of the federal controlled substance laws in 1999, and in the southeast regional center of the National Archives

5

and Records Administration. Jolly Decl. ¶ 16. Assistant United States Attorney Carole M. Fernandez states that staff conducted a search of the Legal Information Office Network System ("LIONS"), "the computer case tracking system . . . used by [SDFL] to track civil, criminal, and appellate investigations and cases and to locate the files pertaining to them," utilizing plaintiff's name. Fernandez Decl. [Dkt. No. 10-2] ¶ 8. It located an entry identifying plaintiff as "one of several defendants in a closed criminal case[,] the case file of which had been sent to SDFL's Miami Closed File Room on April 21, 2008." *Id*. The Miami Closed File Room had sent the file to NARA's regional office, from which it was retrieved and forwarded to SDFL. *Id*. ¶ 9. Although an initial search failed to locate records, *id*. ¶ 11, Fernandez, in response to this litigation, performed another search of the criminal case file, which included "all records contained in [the] case file jackets" pertaining to the district court prosecution and the appeal to the U.S. Court of Appeals for the Eleventh Circuit. *Id*. ¶ 12; *see also* ¶10. Interpreting plaintiff's request "more broadly," Fernandez "looked for not only direct communications between the United States and the Republic of Panama but also any records which referred to, or might be related to, the specific subject matters of [plaintiff's] request . . . ." *Id*. She located 33 responsive records, 25 of which were released in full and eight of which were withheld in full. Jolly Decl. ¶ 17. According to Fernandez, all record systems likely to contain responsive records were searched. In addition, Fernandez states that she is not "aware of any other [retrieval] method or means by which a further search could be conducted which would be likely to locate any additional responsive records." Fernandez Decl. ¶ 13.

Plaintiff proffers a 1999 probable cause affidavit of U.S. Customs Special Agent Edward Wrage in rebuttal to DOJ's declarations. Pl.'s DOJ Opp'n at 5 and Ex. C. [Dkt. No. 21-2]. He

has not shown how this court document calls into question the reasonableness of the otherwise adequate search. The Court therefore finds that DOJ is entitled to judgment on the search issue.

DOJ's Claimed Exemptions

Although plaintiff has not contested DOJ's withholding of eight pages of responsive records, the Court is required to determine whether those withholdings were proper. *See Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022, 1028 (D.C. Cir. 1999) (establishing that the district court has "an affirmative duty to consider the segregability issue *sua sponte*"). Based on Jolly's declaration and the accompanying *Vaughn* index, the Court finds that DOJ properly justified withholding eight pages containing attorney work product and deliberative process material, Jolly Decl. ¶¶ 21-23, under FOIA exemption 5, which protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). "If [as shown here] a document is fully protected as work product, then segregability is not required." *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 371 (D.C. Cir. 2005).

In addition, EOUSA properly withheld third-party identifying information contained in documents four and five, *see Vaughn* index, under FOIA exemption 7(C), inasmuch as such information contained in law enforcement files is "categorically exempt" from disclosure under this exemption in the absence of a showing that an overriding public interest warrants disclosure. *Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F.3d 885, 896 (D.C. Cir. 1995); accord *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (exemption 7(C) "protects the privacy interests of all persons mentioned in law enforcement records, whether they be investigators, suspects, witnesses, or informants") (citation omitted).

Coast Guard's Search for Records

Following its receipt of plaintiff's request in October 2008, staff at the Coast Guard's Seventh District Command Center in Miami, Florida, searched the "widely-used [] electronic database, Marine Information for Safety and Law Enforcement ("MISLE")," utilizing plaintiff's name and the ship's name, "Castor," but located no responsive records. Fields Decl. ¶¶ 3-5. Because the request concerned records that would have been nearly ten years old, "well past the normal document retention policy," the Coast Guard forwarded the request to the National Archives, *id*. ¶ 6, which, in turn, informed plaintiff that such documents would have remained at the Coast Guard, *id*. ¶ 7.

In response to this litigation, the Coast Guard conducted another search of its electronic databases and its hard copy files by the aforementioned terms, to no avail. *Id*. ¶¶ 9-10. "The Seventh District advised that [such] law enforcement records . . . are routinely destroyed by their offices in accordance with [the Coast Guard's retention policy]." *Id*. ¶ 10. A "general search on the public worldwide web regarding the M/V CASTOR" located three non-agency press releases, and also led to Fields' discovery of court records pertaining to plaintiff's criminal case in the Southern District of Florida. *Id*. ¶¶ 11-12. In October 2009, Fields "contacted the Coast Guard Investigative Service ("CGIS") and requested a thorough and reasonable search for responsive electronic or physical records or files." *Id*. ¶ 14. A search by plaintiff's name and "Castor" located no responsive records, "[n]or did CGIS locate any records or files pertaining to Mr. Alfredo Meza, M/V CASTOR, or any authorization given by Panama to the USCG to have jurisdiction over the M/V CASTOR." *Id*. Finally, Fields "contacted Tactical Law Enforcement Team South [] in Opa Locka, Florida to determine whether any records remained from the

8

boarding of the M/V CASTOR in 1999." He located the personal file of a tactical team member. *Id*. ¶ 15. Although the documents contained in the personal file, "are not documents held by the Coast Guard, nor otherwise implicated by FOIA," the Coast Guard provided the documents to plaintiff after redacting third-party identifying information under exemptions 6 and 7(C). *Id*. ¶¶ 15-16.[2] Fields states that searches conducted "between October 2008 and November 2008, and again in between September and October 2009" covered "all files and records where [responsive records] could have been found, or where someone could reasonably expect them to be found[.]" *Id*. ¶ 17. He reasonably surmises that because plaintiff's criminal case ended in 2000 and the "requested information [] dates back to 1999, any responsive documents are likely to have been destroyed in accordance with [the Coast Guard's retention] policy . . . to destroy law enforcement case files after the final disposition of the case[.]" *Id*. ¶ 18.

Identical to his response to DOJ's search evidence, plaintiff points to the 1999 probable cause affidavit of U.S. Customs Special Agent Edward Wrage as evidence of an inadequate search. Pl.'s Coast Guard Opp'n at 4 and Ex. A. [Dkt. No. 32]. But, as the Court found with regard to DOJ, plaintiff has not shown how this court document raises a triable issue on the Coast Guard's otherwise adequate search for records.

CONCLUSION

Finding no genuine issues of material fact with regard to defendants' treatment of plaintiff's FOIA requests, the Court concludes that defendants are entitled to judgment as a matter of law. A separate Order accompanies this Memorandum Opinion.

_____s/s_____<br>COLLEEN KOLLAR-KOTELLY<br>United States District Judge

Dated: June 25, 2010

---

[2] Plaintiff has not contested the Coast Guard's redactions. To the extent that the Court has jurisdiction over the non-agency documents, plaintiff has waived any challenge to the claimed exemptions.